[No. S132496. Apr. 26, 2007.]

TERRY TROPPMAN, Plaintiff and Respondent, v.
GEORGE VALVERDE, as Director, etc., Defendant and Appellant.

**COUNSEL**

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Andrea Lynn Hoch, Chief Assistant Attorney General, Taylor S. Carey, Acting Chief Assistant Attorney General, Jacob A. Applesmith, Assistant Attorney General, Miguel A. Neri, Fiel D. Tigno and Raymond W. Hamilton, Deputy Attorneys General, for Defendant and Appellant.

Law Office of John Halley and John A. W. Halley for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—When a law enforcement officer finds an apparently intoxicated person in a vehicle parked on the side of a road under circumstances that provide the officer reasonable cause to believe that the person had been driving while under the influence of alcohol or a drug, and the person fails to submit to chemical sobriety testing as requested by the officer, may the Department of Motor Vehicles (DMV) suspend the person's driver's license based upon the circumstance that the officer had reasonable cause to

believe the person had been driving while under the influence, or is suspension of a driver's license permissible in this setting only if the DMV finds that the person actually had been driving the vehicle immediately prior to the officer's request?

This question requires us to consider two statutes in the Vehicle Code—section 23612, the "implied consent" law (deeming motorists who have been lawfully arrested for driving while under the influence to have consented to chemical testing) and section 13353, setting forth the consequences (including suspension or revocation of a driver's license) of a motorist's refusal to submit to chemical testing.[1]

The issue presented by this case has divided our Courts of Appeal for several years. Three decisions have concluded that proof of actual driving immediately prior to the suspect's arrest for a driving-while-under-the-influence offense is required before a driver's license may be suspended or revoked for refusing to submit to chemical testing. (*Weber v. Orr* (1969) 274 Cal.App.2d 288 [79 Cal.Rptr. 297] (*Weber*); *Medina v. Department of Motor Vehicles* (1987) 188 Cal.App.3d 744 [233 Cal.Rptr. 557] (*Medina*); *Jackson v. Pierce* (1990) 224 Cal.App.3d 964 [274 Cal.Rptr. 212] (*Jackson*).) Two decisions have disagreed, concluding that proof of actual driving immediately prior to a suspect's arrest is not required for license suspension or revocation under these circumstances. (*Rice v. Pierce* (1988) 203 Cal.App.3d 1460 [250 Cal.Rptr. 832] (*Rice*); *Machado v. Department of Motor Vehicles* (1992) 10 Cal.App.4th 1687 [13 Cal.Rptr.2d 457] (*Machado*); see also 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Public Peace and Welfare, § 228, pp. 774–775 [discussing the split in the case law].)[2]

██ We conclude, consistent with the latter two decisions, *Rice*, *supra*, 203 Cal.App.3d 1460, and *Machado*, *supra*, 10 Cal.App.4th 1687, and with the Court of Appeal's opinion in the present case, that consent to testing pursuant to section 23612 applies broadly and generally to "those who drive"—that is, to those who take advantage of the public streets, roads, and highways to operate motor vehicles in this state—but that this statute does not require proof of actual driving immediately prior to lawful arrest for driving while under the influence of alcohol or a drug. We further conclude that revocation or suspension of a license under section 13353 and related statutes for refusal to submit to chemical testing under the implied consent law—a consequence

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

[2] Sixteen years ago, in addressing a related question, we highlighted the issue presented here and invited the Legislature to "consider resolving [this] problem . . . that has divided the Courts of Appeal . . . ." (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 769, fn. 24 [280 Cal.Rptr. 745, 809 P.2d 404] (*Mercer*), citing *Medina*, *Jackson*, & *Rice*; see also, *post*, fn. 11.) The Legislature, however, has not addressed this issue in the interim.

conditioned upon only four requirements, including that *the arresting officer had reasonable cause to believe the person had been driving a motor vehicle while under the influence,* but *not* including a finding of actual driving— similarly does not require proof that the person actually was driving immediately prior to the arrest.

I

The relevant evidence, derived from the administrative hearing conducted by the DMV, is summarized as follows.

In early January 2003, at approximately 10:45 p.m., Belmont Police Officer Richard Wheaton observed plaintiff Terry Troppman "parked on the side of the road passed out behind the wheel." Wheaton approached the vehicle and attempted to contact Troppman. After knocking upon the driver's side window and receiving no response, Wheaton pounded the window with his fist. Troppman raised her head and peered out the front windshield, mumbling incoherently.

Wheaton opened the driver's door and encountered a strong odor of alcohol. When he inquired as to Troppman's condition, she repeatedly replied, "Yeah, ok." Asked to produce her driver's license and relate her date of birth, she was unable to do so. In response to the officer's inquiry concerning how much she had had to drink, Troppman replied, "A little bit." Asked how much was a little bit, Troppman reiterated, "A little bit."

Wheaton thereafter asked Troppman to exit from the vehicle and move toward the sidewalk. As Troppman complied, she used the vehicle door to maintain her balance. At the curb, Wheaton continued to detect a strong alcoholic aroma emanating from Troppman. He observed that her eyes were bloodshot, red, and watery; her speech was slurred; and her physical movements were extremely slow. Wheaton thereafter administered a series of field sobriety tests, which Troppman failed.

Belmont Police Officer Lewis arrived at the scene to assist Officer Wheaton. After obtaining Troppman's permission to search for her driver's license inside the vehicle, Lewis found a half-empty 1.5-liter bottle of wine tucked inside a plastic bag on the floor next to the driver's seat. Lewis asked Troppman whether she had consumed the wine, and she replied, "Yes," adding that she was an alcoholic. Wheaton then asked Troppman whether "she was driving the vehicle," and Troppman "told me she was."

Wheaton thereafter placed Troppman under arrest for violating section 23152, subdivision (a) (driving while under the influence of alcohol or a

drug), and section 23222, subdivision (a) (possessing an open container of an alcoholic beverage while driving). Wheaton explained the required chemical testing alternatives, to which Troppman replied that she preferred to take a breath test. Wheaton thereafter transported her to a facility for chemical testing.

At the facility, Troppman failed to complete a breath test and refused to continue. Wheaton thereafter read to her the "Chemical Test Refusal Admonition," but she again refused to submit to testing. After briefly resisting, she was handcuffed and transported to the San Mateo County jail, where she was booked on the Vehicle Code charges described above, and for resisting arrest (Pen. Code, § 148).[3]

The DMV conducted a telephonic administrative hearing in mid-February 2003, at which Troppman was represented by counsel. In accord with the requirements set forth in section 13558, subdivision (c)(1), the scope of the hearing was confined to "*only* . . . those facts listed in . . . [s]ection 13557[, subdivision (b)(1)]," as follows: (1) whether *the law enforcement officer "had reasonable cause to believe that the person had been driving a motor vehicle* [*while under the influence of alcohol or drugs*]"; (2) whether "the person was placed under arrest"; (3) whether "the person refused or failed to complete the chemical test . . . after being requested by a peace officer"; and (4) whether "the person had been told that . . . her privilege to operate a motor vehicle would be suspended or revoked if . . . she refused to submit to, and complete, the required testing." (Italics added; see also § 13353, subd. (d) [setting forth the same four factors].)

At the hearing, Troppman testified that she was an alcoholic and had been one for several years. She asserted she had abstained from drinking during the holiday season, but that while driving on the night of her arrest she had an "uncontrollable urge" to drink. In response to that urge, she stopped at a supermarket, purchased a 1.5-liter bottle of wine and a corkscrew, and then drove to search for a place where she could drink "safely." After driving a few blocks, she observed a wide dirt area off the side of the road. She drove onto that area, turned off the vehicle's ignition, and placed her car keys in the bag with the wine bottle. She thereafter consumed much of the wine, and next recalled an officer knocking on the window of her vehicle.

---

[3] Pursuant to the applicable statutory mandates, Wheaton took possession of Troppman's driver's license and served her with a "suspension/revocation order and temporary driver license" that informed Troppman her privilege to operate a motor vehicle would be suspended or revoked, effective in 30 days, unless Troppman requested a hearing within 10 days. (§§ 13353, subds. (a), (b), 13353.2, subds. (a)–(c), 23612, subds. (e), (f).) Troppman requested a hearing.

Troppman denied consuming any of the alcoholic beverage prior to driving her vehicle, but admitted consuming approximately one-half of the contents of the bottle while seated in the vehicle. She did not recall the details of her purchase of the wine, of parking her vehicle, or of the time that elapsed prior to noticing the officer knocking on her window.

In early April 2003 the hearing officer issued findings and a decision suspending Troppman's driver's license, finding: (1) the peace officer had reasonable cause to believe Troppman had been driving a motor vehicle while under the influence of alcohol or drugs (that is, in violation of § 23140, 23152 or 23153); (2) Troppman lawfully was arrested; (3) Troppman was informed that if she refused to submit to or complete a chemical test, her driver's license would be suspended for one year, or revoked for two or three years; and (4) Troppman refused to submit to, or failed to complete, a chemical test after being requested to do so by a peace officer.

Following the administrative proceeding and decision, the DMV suspended Troppman's driver's license for one year pursuant to section 13353 for failure to submit to a chemical test.

Troppman thereafter filed a petition for a writ of mandate, challenging the suspension order on the basis that there was no finding that she had been driving immediately prior to the time she was arrested. The superior court granted the petition and ordered the suspension of Troppman's license set aside, based upon the absence of proof that Troppman actually had been driving a vehicle immediately prior to the arrest while under the influence. In so ruling, the superior court simply stated: "The court finds the *Jackson*[, *supra*, 224 Cal.App.3d 964] logic to be more compelling. So, the Court is going to grant the writ."

The DMV appealed, and the Court of Appeal set aside the lower court's order. The appellate court held that pursuant to section 13353, the license of a motorist suspected of driving while under the influence of alcohol or a drug may be suspended or revoked for refusal to submit to a chemical test, notwithstanding the absence of a finding that the person actually had been driving a motor vehicle immediately prior to his or her arrest for the alleged offense. Both the Court of Appeal's majority opinion and the concurring opinion reasoned that if the Legislature had intended to condition the suspension of a license under section 13353 upon a finding that the licensee actually had been driving immediately prior to the arrest for the alleged

offense, it would have added such an express requirement to the findings enumerated in sections 13353 and 13557.[4]

As noted, we granted Troppman's petition for review in order to resolve the conflict among appellate court decisions.

## II

### A

Resolution of the issue presented in this case requires us to consider two statutes—section 23612, the implied consent law, and section 13353, the license suspension/revocation statute.

■ Section 23612, quoted in the margin,[5] provides that "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical

---

[4] The Court of Appeal majority adopted an analysis consistent with *Rice, supra,* 203 Cal.App.3d 1460, and *Machado, supra,* 10 Cal.App.4th 1687. The concurring opinion, authored by Justice Pollak, advanced two theories: First, that "consent [under section 23612] may be implied by the act of driving at any time, not only during the time period immediately preceding the individual's arrest"—and that such a reading "would uphold the application of section 13353 in this case even if implied consent is considered necessary to do so." Alternatively, Justice Pollak further reasoned, implied consent is not required under section 13353, and that section "authorized [the DMV] to suspend Troppman's license for refusing to submit to a chemical test, whether or not she was driving immediately before she was requested to submit to the test, and whether or not she impliedly consented to such testing." As explained below, we agree with, and adopt, the former construction, which also is consistent with the analysis of the majority opinion below.

[5] Section 23612, subdivision (a)(1) provides in relevant part: "(A) A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. If a blood or breath test, or both, are unavailable, then paragraph (2) of subdivision (d) applies. [¶] (B) A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or urine for the purpose of determining the drug content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. [¶] (C) The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23140, 23152, or 23153. [¶] (D) The person shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, and (i) the suspension of the person's privilege to operate a motor vehicle for a period of one year, (ii) the revocation of the person's privilege to operate a motor vehicle for a period of two years if the refusal occurs within 10 years of a separate violation of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153, or of Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code that resulted in a conviction, or if the person's privilege to operate a motor vehicle has been suspended or revoked pursuant to Section 13353, 13353.1, or 13353.2 for an offense that occurred on a separate occasion, or (iii) the revocation of the person's privilege to operate a

testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for" a driving-under-the influence offense (§ 23612, subd. (a)(1)(A)), and that such testing "shall be . . . administered at the direction of a peace officer having reasonable cause to believe" the person was driving while under the influence of alcohol or a drug. (§ 23612, subd. (a)(1)(C).) In subsequent subsections, the statute sets forth in detail the circumstances under which, pursuant to this implied consent, the arresting officer may require a chemical test, the various test choices available to the arrestee, and the procedure to be followed by the officer with respect to the arrestee's license in the event the arrestee refuses to take or complete a required test. (*Id.*, subds. (a)(2), (b)–(g).)

■ Section 13353 is a related statute that works in tandem with section 23612. Section 13353 specifies actions to be taken by the DMV in the event a person refuses an officer's request to submit to a chemical test. Subdivision (a) of section 13353 authorizes the DMV to suspend or revoke the driver's license of "a person [who] refuses [a law enforcement] officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that *the officer had reasonable cause to believe the person had been driving a motor vehicle*" *while under the influence of alcohol or a drug.* (Italics added.)[6]
■ Section 13353 also confirms the process by which the arresting officer is personally to serve upon a recalcitrant arrestee a notice of suspension or

---

motor vehicle for a period of three years if the refusal occurs within 10 years of two or more separate violations of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153, or of Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code, or any combination thereof, that resulted in convictions, or if the person's privilege to operate a motor vehicle has been suspended or revoked two or more times pursuant to Section 13353, 13353.1, or 13353.2 for offenses that occurred on separate occasions, or if there is any combination of those convictions or administrative suspensions or revocations."

[6] That subdivision provides in full: "If a person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140 [unlawful for a person under 21 years of age to drive with a blood-alcohol content of 0.05 percent or more], 23152 [unlawful for any person to drive under the influence of alcohol or a drug, or to drive with a blood-alcohol content of 0.08 percent or more], or 23153 [unlawful for any person to drive under the influence of alcohol or a drug and cause bodily injury to another], and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's privilege to operate a motor vehicle for a period of one year. [¶] (2) Revoke the person's privilege to operate a motor vehicle for a period of two years . . . . [¶] (3) Revoke the person's privilege to operate a motor vehicle for a period of three years . . . ." (§ 13353, subd. (a).)

At the time of the incident that gave rise to these proceedings, the relevant language of sections 13353 and 23612 was virtually identical to the current language quoted above. Although we quote the current language of the statutes, our analysis also applies to the former statutory language in effect in 2003 when the incident in question occurred.

revocation "pursuant to Section 23612." (§ 13353, subd. (c).) Finally, section 13353, together with related statutes governing the scope of the administrative hearing, specifies four factual findings to be made by the DMV when a suspension or revocation action is subjected to administrative review or hearing. In order to confirm such action, the DMV must find that: (1) the law enforcement officer had "reasonable cause to believe the person had been driving a motor vehicle in violation of [one or more specified Vehicle Code sections]"; (2) the person "was placed under arrest"; (3) the "person refused to submit to, or did not complete, the test or tests after being requested by a peace officer"; and (4) the "person had been told that his or her driving privilege would be suspended or revoked if he or she refused to submit to, or did not complete, the tests or tests." (§ 13353, subd. (d); see also § 13557, subd. (b)(1).)[7] Pursuant to section 13558, subdivision (c)(1), those four factors are the "*only*" issues to be resolved at the administrative hearing concerning license suspension or revocation. (Italics added.)[8]

B

1

Troppman contends that because the implied consent law, section 23612, subdivision (a)(1)(A), states that it applies to "[*a*] *person who drives a motor vehicle*," the statute must be understood to require actual driving immediately prior to the arrest for a driving-while-under-the-influence offense, and that absent such evidence, license suspension or revocation is not triggered under

---

[7] Section 13557, subdivision (b)(1) provides in relevant part: "If the department determines in the review of a determination made under Section 13353 or 13353.1, by a preponderance of the evidence, all of the following facts, the department shall sustain the order of suspension or revocation: [¶] (A) That the peace officer had reasonable cause to believe that the person had been driving a motor vehicle in violation of Section 23136, 23140, 23152, or 23153. [¶] (B) That the person was placed under arrest . . . . [¶] (C) That the person refused or failed to complete the chemical test or tests after being requested by a peace officer. [¶] (D) That . . . the person had been told that his or her privilege to operate a motor vehicle would be suspended or revoked if he or she refused to submit to, and complete, the required testing. [¶] If the department determines, by a preponderance of the evidence, that any of those facts were not proven, the department shall rescind the order of suspension or revocation and, provided the person is otherwise eligible, return or reissue the person's driver's license pursuant to Section 13551. The determination of the department upon administrative review is final unless a hearing is requested pursuant to Section 13558."

The four findings noted above that must be made pursuant to section 13557, subdivision (b)(1), in order to support a suspension or revocation of one's license to operate a motor vehicle, mirror the four issues that define the scope of the DMV's administrative review. (See § 13353, subd. (d), quoted, *ante*, at the close of pt. IIA.)

[8] Section 13558, subdivision (c)(1), provides in relevant part: "The only issues at the hearing on an order of suspension or revocation pursuant to Section 13353 or 13353.1 shall be those facts listed in paragraph (1) of subdivision (b) of Section 13557."

section 13353 even if the other four factors listed in subdivision (d) of that section and in related provisions (§ 13557, subd. (b)(1), quoted, *ante*, fn. 7; see also § 13558, subd. (c)(1), quoted, *ante*, fn. 8) are met.

In support, Troppman relies upon three decisions, *Weber, supra*, 274 Cal.App.2d 288, *Jackson, supra*, 224 Cal.App.3d 964, and *Medina, supra*, 188 Cal.App.3d 744. In *Weber*, officers observed the licensee's car parked partially upon an access road. The licensee admitted he was intoxicated, and after being arrested for driving under the influence of alcohol, he repeatedly refused to submit to a chemical test. At the hearing before the DMV, the licensee's privilege to operate a motor vehicle was suspended based upon his refusal to submit to a chemical test as prescribed by former section 13353, the implied consent statute in force at the time (currently, § 23612). The trial court upheld the suspension. Applying section 13353, the Court of Appeal set aside the suspension, holding: "The fact that the officer has reasonable cause to believe that a person was driving upon a highway is not sufficient if actually he was not so driving," and absent such driving, there is no "implied[] consent to the test, no matter what the appearances to the officer may have been." (*Weber, supra*, 274 Cal.App.2d at p. 291.) The court in *Medina*, addressing similar circumstances, agreed with the court's analysis in *Weber*, concluding that *Weber*'s "construction of the implied consent law seems mandatory. Consent must be implied from some act of the arrestee, not from a peace officer's 'reasonable belief' that the arrestee has so acted." (*Medina, supra*, 188 Cal.App.3d at p. 750.)

Thereafter, the court in *Jackson* determined that under the plain language of the implied consent law, "it is the *act of driving* a motor vehicle . . . which activates the admonition and testing procedures . . . ." (*Jackson, supra*, 224 Cal.App.3d at p. 970.) The court reasoned as follows: "The Legislature has . . . made the officer's reasonable suspicion enough to warrant giving the tests to every individual who may have been driving while intoxicated. By doing so, the immediate goal of the law, to preserve the best evidence of a suspect's blood-alcohol content, is achieved. [Citation.] [¶] However, the suspension of an individual's license is another matter. Suspension is the result of the person's failure to do what he or she has consented to do—submit to a test. The first 19 words of [the implied consent statute, now section 23612—'A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing . . . .'] clearly proclaim that the consent is implied by law from the act of driving. If the person was not driving, he or she did not impliedly agree to submit to the test and, under the statute, has every right to refuse to take it. A person who has no obligation to comply with a law should not be punished for failing to comply with it." (*Jackson, supra*, 224 Cal.App.3d at p. 971.)

2

By contrast, the DMV asserts that although the implied consent law, section 23612, refers to "[a] person who drives a motor vehicle" as deemed to have consented to chemical testing if lawfully arrested for a driving-while-under-the-influence offense, that language does not require evidence of actual driving immediately prior to the lawful arrest for driving under the influence, and hence license suspension or revocation under section 13353 is not limited to situations in which the individual who refuses chemical testing was observed actually driving immediately prior to being lawfully arrested. The DMV argues instead that (a) section 23612 provides general notice to "those who drive" (that is, to "the motoring public") that any person lawfully arrested for driving while under the influence of alcohol or a drug is obligated to submit to chemical testing upon threat of license suspension, and (b) section 13353 is a corresponding "enforcement provision that authorizes the DMV to suspend a person's driving privileges upon proof of the [four] elements specified in the statute" (see §§ 13353, subd. (d), 13557, subd. (b)(1), 13558, subd. (c)(1))—and that nothing more need be proved. In support, the DMV relies upon *Rice, supra,* 203 Cal.App.3d 1460, and *Machado, supra,* 10 Cal.App.4th 1687.

In *Rice, supra,* 203 Cal.App.3d 1460, the Court of Appeal departed from the analysis set forth in the cases relied upon by Troppman. After the licensee in *Rice* was arrested for driving while under the influence, he refused to submit to chemical testing as required by the implied consent law. At a subsequent DMV hearing, the licensee argued he was not required to submit to testing, because he had not been driving the vehicle. The DMV rejected this position and revoked his license. (*Id.,* at pp. 1461–1462.) The licensee thereafter petitioned the superior court for a writ of mandate to compel the DMV to lift the revocation. Relying upon *Medina, supra,* 188 Cal.App.3d 744, the licensee again asserted the revocation order was invalid because the referee had not made a finding that the licensee actually had driven the car immediately prior to the arrest. (*Rice,* at p. 1462.) The trial court granted the petition, and the DMV appealed. (*Ibid.*)

In reversing the trial court's order, the court in *Rice* observed that the legislative purpose underlying the implied consent law (§ 23612) "is two-fold: (1) to obtain the best evidence of blood alcohol content while ensuring cooperation of the person arrested, and (2) to inhibit driving under the influence." (*Rice, supra,* 203 Cal.App.3d at p. 1465.) The court reasoned: "It would serve no useful policy to permit an intoxicated person suspected of driving a vehicle to refuse to take a chemical test for alcoholic content. To require an additional finding [beyond the four required by the statute] that the arrestee was actually driving, would undermine the important goals of

cooperation and deterrence." (*Ibid.*)[9] The court concluded that *Medina*'s interpretation of the implied consent statute gave "inadequate deference to the state's broad police power to legislate for the common health and welfare— i.e., ' "to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving." [Citation.]' [Citation.]" (*Id.*, at p. 1464.) In support of that view, the court in *Rice* observed that the implied consent law "refers to any 'person' lawfully arrested" for having violated section 23152 or 23153, and that the statute "does not speak in terms of the lawful arrest of a 'driver.' (Cf. definitions of 'person' in § 470 and 'driver' in § 305.) A lawful arrest for driving under the influence requires that there be reasonable cause to believe the person was driving (*Noia* v. *Cozens* (1973) 34 Cal.App.3d 691, 694 [110 Cal.Rptr. 231]), not proof beyond a reasonable doubt the arrestee was in fact driving. [¶] . . . [¶] The statute . . . [provides] that upon a lawful arrest for driving under the influence, a person must submit to one of the chemical tests administered at the direction of a peace officer. Upon failure to submit, the person shall suffer loss of his driving privileges. This interpretation is consistent with the very important purpose of the statute to keep persons who are reasonably suspected of operating a vehicle while intoxicated off the road and to secure the civil cooperation of all persons privileged to drive by providing objective proof of their sobriety when suspected of driving under the influence. [Citations.] Other than to cite to *Medina*, plaintiff makes no showing why we should disregard the plain language and engraft an additional requirement onto the statute. In light of our interpretation of the statute, we decline to follow *Medina*." (*Rice, supra,* 203 Cal.App.3d at pp. 1465–1466.)

Finally—and most recently (in 1992)—in *Machado, supra,* 10 Cal.App.4th 1687, the DMV suspended a licensee's privilege to operate a motor vehicle because he failed to submit to chemical testing following his arrest for driving while under the influence of alcohol. (*Id.*, at p. 1689.) At the administrative hearing held to determine the propriety of the suspension, the licensee claimed he was not the driver and therefore was not required to submit to such testing. (*Ibid.*) The hearing officer found that the licensee was the driver and affirmed the suspension. (*Id.*, at p. 1691.) The licensee thereafter sought a writ of mandate in the superior court, which concluded that the hearing officer's finding that the licensee was the driver was not

---

[9] The court further observed in *Rice*: "Rather than carve out an exception, the legislative policy tries to get these people off the road and out of harm's way. In light of the severity of the problem and the difficulty of detection, the law encourages compliance with the implied consent law in situations where the officer reasonably suspects the arrestee to have been driving while under the influence of alcohol or drugs. To bar license suspension of persons who are lawfully arrested but are subsequently found not to be the actual driver would render enforcement more difficult at a time when society deserves increased protection in eradicating a problem which unfortunately has become all too common in our modern, mobile culture." (*Rice, supra,* 203 Cal.App.3d at p. 1465.)

supported by substantial evidence. The court, however, upheld the suspension on the ground that the implied consent law requires only that, in order to trigger the chemical testing requirement, an officer have probable cause to arrest the licensee for committing the offense of driving while under the influence. (*Id.*, at pp. 1691–1692.)

In affirming the trial court's order, the appellate court in *Machado* examined the conflicting interpretations of the implied consent law, as set forth in *Medina* and *Jackson* on the one hand, and *Rice* on the other, and concluded that "the *Rice* case correctly interprets the statutes and legislative intent . . . ." (*Machado*, *supra*, 10 Cal.App.4th at p. 1696.) The court in *Machado* concluded that, when "[c]onsidered in its entirety," the language of both the implied consent statute (currently § 23612) and section 13353 "plainly applies to persons who are lawfully arrested for drunk driving *when the arresting officer has probable cause to believe the person was driving*. The introductory language of [the implied consent statute] ('Any person who drives a motor vehicle') operates to describe *the general class of persons to whom the law applies—those who drive. The language does not limit application of the laws to those who are proved to be actually driving at the time of the lawful arrest.* Rather, the language of the sections specifically conditions their application on whether a peace officer has probable cause to believe a person was driving." (*Machado*, at p. 1698, italics added.)

As explained below, we agree with the DMV and with *Rice*, *supra*, 203 Cal.App.3d 1460, and *Machado*, *supra*, 10 Cal.App.4th 1687.

## C

■ "The fundamental principle of statutory interpretation is 'the ascertainment of legislative intent so that the purpose of the law may be effectuated . . . .' " (*Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372 [211 Cal.Rptr. 748, 696 P.2d 141].)[10]

---

[10] In attempting to discern the intent of the Legislature, we rely upon well-settled rules. " 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citations.]" (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68 [40 Cal.Rptr.3d 750, 130 P.3d 519].) Courts are "not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858; see *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

As observed above, the court in *Rice* identified a dual legislative purpose underlying the implied consent law, section 23612: "(1) to obtain the best evidence of blood alcohol content while ensuring cooperation of the person arrested, and (2) to inhibit driving under the influence." (*Rice, supra,* 203 Cal.App.3d at p. 1465.)

Similarly, this court has outlined in *Mercer, supra,* 53 Cal.3d 753, the purpose of both the implied consent law, section 23612, and the related license suspension/revocation law, section 13353. We explained in *Mercer* that the Legislature adopted the implied consent law in 1966 in response to the United States Supreme Court's decision in *Schmerber v. California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826]. *Schmerber* approved forcible chemical testing of persons arrested, so long as (i) the test is incident to a lawful arrest for driving under the influence of alcohol or a drug, (ii) the circumstances require prompt testing, (iii) the arresting officer has reasonable cause to believe the arrestee is intoxicated, and (iv) the test is conducted in a medically approved manner. (*Id.,* at pp. 766–772.) We observed in *Mercer* (quoting *People v. Superior Court (Hawkins)* (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145]): " 'Although it is clear under *Schmerber* that a person who has been lawfully arrested may have a blood sample forcibly removed without his consent, provided [conditions described above are met], nevertheless such an episode remains an unpleasant, undignified and undesirable one. [¶] However, the shocking number of injuries and deaths on the highways caused by drunk drivers has compelled society to adopt extreme measures in response.' " (*Mercer, supra,* 53 Cal.3d at pp. 759–760.) We observed in *Mercer* and *Hawkins* that by enacting the implied consent law, thereby providing an alternative method of compelling a person arrested for driving while under the influence to submit to chemical testing, the Legislature afforded officers a means of enforcement that does not involve physical compulsion. We stated: " 'It is noteworthy that in so doing, the Legislature took pains to condition' " use of this alternative method of compelling chemical testing " '*upon the reasonable belief of the peace officer*' " *that the arrestee had been driving while under the influence of alcohol or drugs.* (*Mercer, supra,* 53 Cal.3d at p. 760, italics added, quoting *Hawkins, supra,* 6 Cal.3d 757, 765.)[11]

---

[11] In *Mercer,* which involved a factual setting similar to that of the present case, the issue was whether the "lawful arrest" requirement of the implied consent statute (currently § 23612) and the related license revocation statute (§ 13353) had been met where, under the law then in effect, the officer lacked statutory authority to effect a warrantless misdemeanor arrest for a driving-while-under-the-influence offense that was not committed in the officer's direct presence. (*Mercer* did not present the issue confronting us here—the arrestee in that case did not claim that the revocation of his license was void because there was no proof or finding that he impliedly consented to testing by being a person who "drives a motor vehicle.") We held in *Mercer* that the lawful arrest requirement had not been met, because under the statutes then in effect a warrantless misdemeanor arrest for driving while under the influence was permissible

Harmonizing the two statutes here at issue—section 23612, the implied consent law, and section 13353, the license suspension/revocation law—we agree with the DMV, first that section 23612 reasonably should be construed to apply broadly and generally to the motoring public (that is, to those who take advantage of the public streets, roads, and highways to operate a motor vehicle), and that the statute does *not* require evidence that actual driving occurred immediately prior to the arrest for driving while under the influence. As Justice Pollak observed in his concurring opinion below, such a construction—under which "consent may be implied by the act of driving at any time, not only during the time period immediately preceding the individual's arrest"—is "consistent with a literal reading of section 23612."[12] Indeed, as the court observed in *Rice, supra*, 203 Cal.App.3d 1460, 1465, a contrary interpretation of the implied consent law would disserve the public safety policy that apparently underlies the legislative intent reflected in the statute.

We further agree with the DMV, and with *Rice, supra*, 203 Cal.App.3d 1460, and *Machado, supra*, 10 Cal.App.4th 1687, that the primary focus of both statutes (§ 23612, the implied consent law, and § 13353, the license suspension/revocation law) is upon *whether the officer had probable cause to believe the person had been driving while under the influence, and therefore whether the person lawfully was arrested*—and that revocation or suspension of a license under section 13353 does not require proof beyond the four factors listed in section 13353, subdivision (d), and section 13557, subdivision (b)(1), and made exclusive by section 13558, subdivision (c)(1). In other words, no requirement exists, under *either* the implied consent law, section 23612, or under the license suspension/revocation statute, section 13353, of proof that the person actually was driving immediately prior to his or her arrest for driving while under the influence.

The legislative history of section 13353 and related statutes confirms our construction of the legislative scheme. Within one year after the Court of

---

only if the officer observed some volitional movement of the vehicle caused by the suspected driver, but we also noted that the Legislature was free to revise the statutes to yield a different result. (*Mercer, supra*, 53 Cal.3d at p. 769.) Thereafter, the Legislature took such action, allowing warrantless arrest for a misdemeanor driving-while-under-the-influence violation not committed in the arresting officer's presence, in circumstances in which the person otherwise might destroy or conceal evidence. (§ 40300.5, subd. (e), as added by Stats. 1996, ch. 1078, § 6, p. 7366; see *People v. Schofield* (2001) 90 Cal.App.4th 968, 974–975 [109 Cal.Rptr.2d 429] [authority extends to cases in which metabolic evidence would be dissipated over time].)

[12] We also observe that there is no danger that such a construction would require a person, simply because he or she occasionally drives, to submit (on pain of loss of driving privileges) to *any and all* law enforcement demands, however arbitrary in time, place, and circumstance, to a chemical sobriety test. Sections 13353 and 23612 both condition the loss-of-license sanction upon the DMV's finding of a *lawful arrest for driving while under the influence of alcohol or a drug*—a finding that is dependent upon an officer's possessing *probable cause to believe* the person *was driving in that condition.*

Appeal's 1988 decision in *Rice, supra*, 203 Cal.App.3d 1460, created a conflict by disagreeing with *Medina, supra*, 188 Cal.App.3d 744, and declining to add an "actual driving" requirement to the four factors listed in section 13353, the Legislature in 1989 enacted sections 13557, subdivision (b)(1), and 13558, subdivision (c)(1). (See Stats. 1989, ch. 1460, §§ 13, 14, pp. 6512–6514.) As noted above, section 13557, subdivision (b)(1), reiterated the four factors set forth in section 13353, subdivision (d) and its predecessor provisions—including, as the first factor, that the law enforcement officer had "reasonable cause to believe that the person had been driving a motor vehicle" while under the influence—and made clear that those four factors are to be considered by the DMV in its administrative review of orders suspending or revoking a person's license to drive. Section 13558, subdivision (c)(1), specified that those same four factors "shall be" "[t]he *only* issues at the hearing. . . ." (Italics added.) When viewed in the context of the then recent *Rice* decision, these 1989 amendments to these closely related statutes— particularly the amendment to section 13558, subdivision (c)(1)—constitute an implicit confirmation of *Rice*'s holding that the four factors, none of which includes actual driving, are the *sole* factors necessary to trigger suspension or revocation penalties under section 13353.[13]

 In light of the foregoing, we conclude that the Legislature's omission of actual driving immediately prior to a suspect's arrest for a driving-while-under-the-influence offense as a requirement with respect to license suspension or revocation under section 13353 was a considered and deliberate decision, and one that we are obliged to honor.

Finally, we reject Troppman's suggestion that the inclusion of the statutory language "pursuant to section 23612" in section 13353—a phrase added to

---

[13] Additional support for this conclusion is reflected in the history of former section 13558, subdivision (c)(2), governing license suspension pursuant to section 13353.2, which proscribed "driving" or being "in actual physical control of a motor vehicle" "when" having a specified blood-alcohol content. When enacted in 1989, former section 13558, subdivision (c)(2), provided that "the only issues" at a license-suspension hearing conducted under *that* section included "whether the person was driving or in actual physical control of a motor vehicle when the person had" a specified blood-alcohol content. (Stats. 1989, ch. 1460, § 14, pp. 6513–6514.) By so providing, the Legislature drew a clear distinction between the language used in subdivision (c)(1) and that used in subdivision (c)(2) of section 13558: The Legislature (1) required under the former subdivision only that a peace officer have reasonable cause to believe that the person had been driving a motor vehicle while under the influence, but (2) required under the latter subdivision evidence that the licensee "was driving" (or was in actual physical control of) a motor vehicle "when" the person had a certain blood-alcohol content. This distinction demonstrates that when the Legislature mandated in the former subdivision that the issues to be resolved at a section 13353 suspension or revocation hearing would be limited to "only" four factors, not including actual driving immediately prior to the arrest for driving under the influence, the Legislature obviously understood how to clearly provide otherwise had it intended to make such actual driving a requirement for license suspension or revocation.

that statute in 1985 (see Stats. 1985, ch. 735, § 2, p. 2386 [incorporating the words "pursuant to section 23157"—the predecessor to § 23612])—implicitly might reflect an intent on the part of the Legislature to incorporate into section 13353 an actual-driving requirement. Troppman's premise is that the implied consent law, section 23612, *itself* contains an actual-driving requirement—but as observed above, we reject that premise, and instead agree with the DMV that section 23612 applies broadly and generally to "those who drive"—that is, to those who avail themselves of the public streets, roads, and highways to operate motor vehicles in this state. This is a category that clearly includes Troppman, who drove to the very spot, remote from her home, where she eventually was arrested. This category also includes anyone else—licensed or otherwise—who uses public streets or roadways in driving a motor vehicle in this state.

Although nothing in the legislative history we have reviewed concerning the 1985 amendment reveals why the language "pursuant to section 23612" was added to the statute at that time, there also is no indication that the Legislature in taking this action intended to impose or incorporate an actual-driving requirement. In view of the foregoing legislative history, we cannot conclude that the Legislature intended to require actual driving immediately prior to the person's lawful arrest under either the implied consent law, section 23612, or the suspension/revocation statute, section 13353.

### III

When a law enforcement officer observes a person inside a motor vehicle and has reasonable cause to believe that person has been driving while under the influence of alcohol or a drug, and the four findings required by section 13353, subdivision (d) are made, that person's license to operate a motor vehicle may be suspended or revoked. Such sanctions under section 13353 are applicable whether or not the individual was driving immediately prior to his or her arrest.

Accordingly, the DMV was not required to find that Troppman actually was driving immediately prior to the time of her arrest, and the superior court erred in concluding otherwise. The circumstances that Troppman, by her own admission, drove her vehicle shortly before a law enforcement officer observed her slumped over the wheel (and a bottle of wine partially consumed by her that evening within her reach), that she acted in a manner that provided the officer with reasonable cause to believe she had been driving while under the influence of alcohol and thus to lawfully arrest her, and that she subsequently refused to complete chemical testing, provided the DMV with a sufficient basis under section 13353 to suspend her driver's license.

---

## IV

The judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Klein, J.,* concurred.

---

*Presiding Justice, Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.