Filed 2/14/19

**TO BE PUBLISHED IN THE OFFICIAL REPORTS**

IN THE APPELLATE DIVISION

OF THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF YOLO

| | |
|---|---|
| THE PEOPLE, | ) Case No.: CR M 17-6615 |
| Plaintiff and Respondent, | ) |
| vs. | ) **DECISION** |
| VINCENT GUTIERREZ, | ) |
| Defendant and Appellant. | ) |

APPEAL from the denial of a motion to suppress evidence of the Superior Court of Yolo, Janene Beronio, Reversed.

James Bradford, Yolo County Public Defender, for defendant and appellant.

Daniele Schlehofer, Yolo County District Attorney for plaintiff and respondent.

Defendant Vincent Gutierrez appeals from the denial of his motion to suppress evidence. As the trial court erred in denying the motion, we **REVERSE**.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2017, the People filed a complaint against defendant Vincent Gutierrez, alleging two counts: Count 1, a misdemeanor violation of Harbors and Navigation Code section 655(b), operating a vessel while under the influence of alcohol or drugs; and Count 2, a misdemeanor violation of Harbors and Navigation Code section 655(c), operating a vessel at .08 percent or more.

On May 15, 2018, defendant filed a motion to suppress evidence.

At the evidentiary hearing, the following evidence was adduced:

On September 3, 2017, at approximately 5:50 p.m., Yolo County Sheriff's Sergeant Sam Machado detained the occupants of a boating vessel on the Sacramento River below the Broderick Boat Ramp in Yolo County for alleged speed-related violations of the Harbors and Navigation Code. He observed open containers in the boat and smelled the odor of alcohol coming from the boat. During this detention, Sergeant Machado made contact with defendant Vincent Gutierrez, whom he believed to be the operator of the vessel. Sergeant Machado noticed that defendant's eyes were red and watery. Defendant denied consuming alcohol.

Suspecting that Mr. Gutierrez was operating the vessel under the influence of alcohol in violation of Harbors and Navigation Code section 655, Sergeant Machado conducted a Horizontal Gaze Nystagmus ("HGN") field sobriety test. During the test, he observed a lack of smooth pursuit and defendant would not follow the stimulus. Sergeant Machado asked defendant if he was willing to submit to a preliminary alcohol screening ("PAS") test to detect the presence of alcohol. Defendant refused.

Deputy Harbaugh testified that he and Deputy Zeiler further detained defendant and administered the HGN and finger to nose field sobriety tests. Defendant told Deputy Harbraugh that he had consumed two beers. He observed nystagmus in both of defendant's eyes.

Defendant also failed the finger to nose test. Deputy Harbaugh asked if he was willing to submit to a PAS test. Again, defendant refused. Deputy Harbaugh arrested him for boating under the influence.

Upon arresting Mr. Gutierrez, Deputy Harbaugh advised him that he had "a choice of a blood or breath test." Deputy Harbaugh did not advise him that he had the right to refuse to submit to either test. Faced with those two options, Mr. Gutierrez chose to submit to a blood test. Deputy Harbraugh testified that it was department policy to require submission to either test. Deputies Harbaugh and Zeiler transported him to the boat dock, handcuffed him, and placed him in the backseat of Deputy Martin's patrol vehicle, where he was held until a blood sample was obtained by medical staff.

The trial court denied the motion. After argument and supplemental briefing, the trial court ruled that "under the totality of the circumstances, [Mr. Gutierrez's consent] ... was not simply an acquiescence to the police or a coercion or anything like that… [It] was valid consent."

On June 28, 2018, defendant filed a timely notice of appeal from the trial court's denial of his motion to suppress.

Defendant filed an opening brief.

The People filed a respondent's brief.

Defendant filed a reply brief.

On December 17, 2018, the Appellate Division certified this matter for transfer to the Third District Court of Appeal. The court denied transfer.

## DISCUSSION

### A. Standard of review applicable to motions to suppress.

"[The] standard of review on appeal from the denial of a motion to suppress is well established. We defer to the trial court's factual findings where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under the Fourth Amendment standards of

reasonableness. [Citation.]" (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1073-74, citing *People v. Leyba* (1981) 29 Cal.3d 591, 596-97.)

In *People v. Leyba*, *supra*, 29 Cal.3d at pp. 596-98, the California Supreme Court elaborated on the standard:

> In *People v. Lawler* (1973) 9 Cal.3d 156, 160, we discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps. In the first step the trial court must "find the facts" relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in *Lawler* (at p. 160) that for the purpose of finding those facts "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence."
>
> No less important, however, is the second step of the process. As we observed in *Lawler*, "The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution." (*Ibid*.) Because "that issue is a question of law," the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, we explained, in such review it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*Ibid*.) On that issue, in short, the appellate court exercises its independent judgment.

**B.     The trial court erred in denying the motion to suppress.**

Defendant argues that the warrantless blood draw violated defendant's Fourth Amendment rights under the United States constitution.

The People did not try to justify the search under the search incident to arrest exception to the warrant requirement. The sole issue on appeal is whether defendant's consent to the blood draw was voluntary under the totality of the circumstances.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects; against unreasonable searches and seizures." (U.S. Cont., 4th Amend.) A blood draw is a search subject to the Fourth Amendment. (*Schmerber v. California*

(1966) 384 U.S. 757, 767.) In a criminal case, the prosecution bears the burden of establishing the constitutionality of a search conducted without a warrant. (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 454-455.)

An exception to the warrant requirement for a search exists if an authorized party voluntarily consents to that search without a warrant. (*People v. James* (1977) 19 Cal.3d 99, 106.) However, "where ... the prosecution relies on consent to justify a warrantless search or seizure, it bears the 'burden of proving that the defendant's manifestation of consent is a product of his free will and not a mere submission to a claim of lawful authority.'" (*People v. Zamudio* (2008) 43 Cal.4th 327, 341; *Bumper v. North Carolina* (1968) 391 U.S. 543, 548 [coercion exists when officer misrepresented that he has a valid warrant and occupant consents to the search].)

Whether consent is voluntarily given is a question of fact, which depends on the "totality of the circumstances" of the individual case. (*United States v. Dayton* (2002) 536 U.S. 194, 207.) The proper inquiry is how a reasonable person would have understood the exchange between the officer and the person providing consent. (*Florida v. Jimeno* (1991) 500 U.S. 248, 251-252.) "[I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact if was voluntary or coerced." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 233.)

*1.   California's implied consent statute does not apply.*

Under Vehicle Code section 23612, anyone who drives a motor vehicle is "deemed to have given his or her consent" to a chemical test of his or her blood, breath, or urine. (Veh. Code, § 23612, subd. (a).) Refusal to submit to the test can result in suspension of a driver's license, or revocation of a driver's license if the refusal follows any of various convictions involving driving under the influence or if it follows various combinations of suspensions or revocations. (Veh. Code, § 23612, subd. (a)(1)(D).) The person must be told that his or her refusal to submit or to complete a test will result in a fine or mandatory imprisonment if the person is convicted of drunk driving, and suspension or revocation of his or her driver's license. (*Ibid*.) The officer must advise the arrested person that he or she has a choice of a blood or breath test. (Veh. Code, § 23612, subd. (a)(2)(A).) This statute only applies to those who drive. (*Troppman v. Valverde*

(2007) 40 Cal.4th 1121, 1139 ["[S]ection 23612 applies broadly and generally to 'those who drive'—that is, to those who avail themselves of the public streets, roads, and highways to operate motor vehicles in this state."].)

The parties agree that Harbors and Navigation Code section 655.1 applies here. In contrast to section 23612, parties are not deemed to have given their consent to a blood, breath, or urine test by driving a boat under section 655.1.  Rather, the statute provides that an officer "….having reasonable cause to believe that any person was operating a [boat] under the influence of an alcoholic beverage or any drug … who lawfully arrests the person for any violation of subdivision (b), (c), (d), (e), or (f) of Section 655, may request that person to submit to chemical testing of his or her blood, breath, or urine for the purpose of determining the drug or alcoholic content of the blood." (Emphasis added, Harb. & Nav. Code, § 655.1, subd. (b)(1); see also subd. (b)(2)(B) [an arrested person must be advised that he or she has a right to refuse chemical testing].) Section 655.1 confers no legal authority on an officer to <u>require</u> a submission to a blood or breath test.

Here, Deputy Harbaugh did not merely request that defendant submit to a blood or breath test.  The deputy told defendant he *had to* submit to a test.

The issue, therefore, is whether this misstatement by Deputy Harbaugh renders defendant's "consent" to the blood draw involuntary and thereby invalid.

*2.      Defendant's "consent" was not voluntary under a totality of the circumstances.*

There are no cases decided under section 655.1 which examine the consequences of misadvising an arrestee. Therefore, this case presents a novel legal question.

*People v. Harris* (2015) 234 Cal.App.4th 671, explains the test to determine whether consent is voluntary.

To be effective, consent must be voluntary. [Citations.]" (*People v. Ledesma* (1987) 43 Cal.3d 171, 234.) "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority. [Citations.]" (*Florida v. Royer* (1983) 460 U.S. 491, 497.) "The voluntariness of consent is a

question of fact to be determined from the totality of circumstances. [Citations.] If the validity of a consent is challenged, the prosecution must prove it was freely and voluntarily given—i.e., 'that it was [not] coerced by threats or force, or granted only in submission to a claim of lawful authority.' [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 445-46.)

Here, the officer violated section 655.1 by telling defendant he had to choose instead of requesting that he submit to a blood or a breath test. At the time the defendant was told he had to submit to a test, he had been detained for field sobriety tests, taken from his boat, transported to a patrol vessel, and placed under arrest. These circumstances favor a finding of involuntariness.

The People do not cite any cases that support a finding of voluntariness under these circumstances.

In *U.S. v. Drayton* (2002) 536 U.S. 194, the court examined whether defendants' consent to a search of their luggage was voluntary. Unlike in this case, the officer in *Drayton* asked for permission to search the luggage. (*Id.*, p. 206 ["Nothing Officer Lang said indicated a command to consent to the search. Rather, when respondents informed Lang that they had a bag on the bus, he asked for their permission to check it. And when Lang requested to search Brown and Drayton's persons, he asked first if they objected, thus indicating to a reasonable person that he or she was free to refuse. Even after arresting Brown, Lang provided Drayton with no indication that he was required to consent to a search. To the contrary, Lang asked for Drayton's permission to search him ("Mind if I check you?"), and Drayton agreed."].) Those are not the circumstances here, as defendant was told he *had to* submit to a test.

*People v. Avalos* (1996) 47 Cal.App.4th 1569, held only that police deception in procuring consent does not *automatically* render a search involuntary. But in *Avalos*, the police deception was as to the purpose for the search, not that defendant had to consent to the search. Moreover, here, the officer's demand directly contravenes what the statute permits: that the officer may request submission to a test. The circumstances were clearly different in *Avalos* based on the misrepresentation and the degree of the detention when consent was procured:

> Here, the police actually offered a dual purpose for searching defendant's truck. They said they wanted to look for stolen property, which was clearly not the case. But they also disclosed they were looking for "other contraband," which was <u>entirely accurate and reasonably alerted defendant the object of the search would</u>

include narcotics. The officers were also careful to ensure defendant's consent was voluntary. Once it became clear defendant had difficulty understanding English, Severson summoned a Spanish-speaking officer to assist him. Defendant was also given a Spanish-language consent-to-search form, which he read and signed. He was not under arrest, physically restrained, or threatened in any manner. (Emphasis added, *Id*. at p. 1578.)

The People cite *People v. Harris*, supra, for the proposition that the defendant did not show any signs that he did not want to provide the blood sample, so his consent was voluntary. The court of appeal affirmed the trial court's denial of a motion to suppress. The court of appeal held that, under the totality of the circumstances, defendant freely and voluntarily consented to the blood draw. The undisputed evidence was that, after being admonished by a deputy under the implied consent law, defendant did not refuse to give a blood sample or demonstrate a desire to withdraw his consent either verbally or by resisting the phlebotomist's attempt to draw blood. Here, though, there is no statutory equivalent of the implied consent law in boating under the influence cases. Section 655.1 does not authorize the officer to compel an arrestee to submit to a test.

In *People v. Monterroso* (2004) 34 Cal.4th 743, the defendant was arrested and in handcuffs at the time police asked him to consent to a search, but police did not make any false or misleading statements to procure defendant's consent. (See also, *People v. Ibarra* (1980) 114 Cal.App.3d 60, 65 [defendant did not contend that police had made any false or misleading statements to procure his consent]; *People v. Balov* (2018) 23 Cal.App.5th 696, 702-03 [officer correctly told defendant under implied consent law that he had a choice of blood or breath test, he just omitted a recitation of the consequences if defendant refused; court held advisement merely incomplete not false.) Here, defendant was told he had to take a blood or breath test. This was a false statement that, when coupled with other circumstances, compels a finding of involuntariness.

The trial court should have granted the motion to suppress based on finding that consent was involuntary.

The trial court's denial is **REVERSED**.

DATED:  February 14, 2019

 

_____
David Reed
Presiding Judge of the Appellate Division

DATED:  February 14, 2019

 

_____
David Rosenberg
Judge of the Appellate Division

DATED:  February 14, 2019

 

_____
Daniel P. Maguire
Judge of the Appellate Division