Filed 12/16/25  Tran v. Dept. of Motor Vehicles CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JUSTIN TRAN, | H052535 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 23CV423054) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Respondent. | |

Just before 1:00 a.m. on December 5, 2021, appellant Justin Tran (Tran) was contacted by deputies of the Santa Clara County Sheriff's Department while sleeping in his van that was illegally parked in a bus stop.  After the deputies observed signs of intoxication, Tran was arrested for driving under the influence of alcohol.  The deputies advised Tran of his obligation to submit to chemical testing and the consequences of a refusal.  Tran refused to submit to chemical testing and, as a result, his California driver's license was suspended by respondent Department of Motor Vehicles (DMV).

Tran challenged the DMV's action by requesting and receiving an Administrative Per Se (APS) hearing.  His chief contentions at the hearing were that:  (1) he had not consumed alcohol that evening; (2) instead, he had used hand sanitizer with a 75% alcohol content as required by his employer; (3) he had a bad reaction to the hand sanitizer, including burning eyes, and as a result, he pulled his van off the road and went

to sleep; and (4) the deputies had no grounds to arrest him for driving while intoxicated because they had not observed him driving. The DMV hearing officer upheld the suspension, and the trial court thereafter denied Tran's writ of mandate petition challenging the hearing officer's decision

On appeal, Tran challenges the trial court's judgment denying the petition for writ of mandate. He reiterates that he had not consumed alcohol before he was contacted by the deputies, and that the issues concerning sleeping in his van related to his use of a hand sanitizer and were not the result of his intoxication. Tran also makes several other contentions which we address below.

We conclude that the trial court's findings in its review of the administrative decision were supported by substantial evidence. Accordingly, we will affirm the judgment denying Tran's petition for writ of mandamus.

## I.  PROCEDURAL BACKGROUND

On September 20, 2023, Tran filed a petition for alternative writ of mandate (the petition), challenging a DMV order after hearing suspending his driver's license. Tran alleged in the petition that he was detained by a peace officer from the Santa Clara County Sheriff's Office on December 5, 2021, and he was then served with an administrative per se order suspending his driver's license. Tran requested and received an APS hearing. As a result of the APS hearing, the DMV issued an order suspending his driver's license for one year, effective September 14, 2023. The suspension order was based upon Vehicle Code section 13353.3.[1]

---

[1] All further statutory references are to the Vehicle Code unless otherwise stated. Section 13353.3, subdivision (a) provides that "[a]n order of suspension of a person's privilege to operate a motor vehicle pursuant to Section 13353.2 shall become effective 30 days after the person is served with the notice pursuant to Section 13382 or 13388, or subdivision (b) of Section 13353.2." Subdivision (b) of that statute provides: "The period of suspension of a person's privilege to operate a motor vehicle under Section 13353.2 is as follows: [¶] . . . [¶] (2)(A) If the person has been convicted of one (continued)

Tran further alleged in the petition that: (1) he had been unlawfully "arrested/detained"; (2) he was not operating his motor vehicle at the time of his encounter with peace officers; (3) he had not consumed any alcohol; (4) he had used a hand sanitizer containing 75% alcohol that was distributed by his employer and was recommended for use by Tran as a driver for passengers who were senior citizens; and (5) any test in which alcohol was detected in his system was due to his use of the alcohol-based hand sanitizer.

The DMV opposed Tran's petition.

After a hearing on the petition on January 22, 2024, the trial court denied Tran's petition on August 21, 2024. In its "Decision on Petition for Writ of Mandate" (Final Decision) the court concluded the evidence had clearly shown that Tran had operated a motor vehicle while intoxicated, and, after being detained, he had refused to undergo a chemical test to determine whether he had a prohibited blood alcohol content.

On August 28, 2024, Tran filed a notice of appeal.

On September 13, 2024, the trial court filed a judgment denying petition for writ of mandate.

## II. DISCUSSION

### A. Whether Appeal Is Proper

A threshold concern we must consider is appealability. (See *Porter v. United Services Automobile Assn.* (2001) 90 Cal.App.4th 837, 838 [appellate court has a duty to examine on its own motion issues concerning its jurisdiction].) Tran, in his notice of

---

or more separate violations of Section 23103, as specified in Section 23103.5, or Section 23140, 23152, or 23153, or Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code, the person has been administratively determined to have refused chemical testing pursuant to Section 13353 or 13353.1 of this code, or the person has been administratively determined to have been driving with an excessive concentration of alcohol pursuant to Section 13353.2 on a separate occasion, which offense or occasion occurred within 10 years of the occasion in question, the person's privilege to operate a motor vehicle shall be suspended for one year . . . ."

3

appeal filed August 28, 2024, expressly mentioned that the appeal was from the judgment or order of August 21, 2024.  Tran also checked the box indicating that the appeal was taken from the "[j]udgment after court trial."  No judgment, however, was entered below until September 13, 2024, and the August 21, 2024 Final Decision was *not* appealable.  (See *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 [neither statement of decision nor memorandum of decision is an appealable order].)

On November 8, 2024, this court issued an order that Tran show cause why his appeal should not be dismissed as being premature and/or having been taken from a nonappealable order.  Thereafter, by order of this court dated January 10, 2025, we augmented the record on our own motion to include the September 13, 2024 judgment, which we noted conformed to the Final Decision filed August 21, 2024.  In our order, this court further discharged the prior order to show cause, and we deemed Tran's notice of appeal to have been filed on September 13, 2024.  (See Cal. Rules of Court, rule 8.104(d)(2)[2] ["[t]he reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment"]; see also rule 8.100(a)(2) ["notice of appeal must be liberally construed"].)

We will therefore address the merits of the appeal from the judgment denying Tran's petition for writ of mandate.

### B.    Applicable Law

#### 1.    *Implied Consent Law*

Under California's Implied Consent Law, section 23612, subdivision (a),[3] a motorist who is lawfully arrested for driving under the influence of alcohol "is deemed to

---

[2] Hereafter, all rule references are to the California Rules of Court.

[3] "A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly (continued)

have given his or her consent to chemical testing of his or her blood or breath to determine blood-alcohol content. [Citation.] A driver lawfully arrested for driving under the influence of alcohol has the choice of a breath or a blood test, and the arresting officer shall inform the driver of that choice. [Citation.] . . . A person who refuses to submit to, or fails to complete, a chemical test under section 23612 is subject to suspension of his or her driving privileges, among other sanctions. (§ 13353, subd. (a)(1).) The officer shall tell the arrestee that his or her failure to submit to, or failure to complete, the required chemical testing will result in a fine and suspension or revocation of driving privileges. [Citation.]" (*Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 81 (*Garcia*).) " ' "Framed in the terms of 'implied consent,' choosing the 'yes' option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the 'no' option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent." [Citation.] . . .' [Citation.]" (*People v. Balov* (2018) 23 Cal.App.5th 696, 702.) The statute "applies broadly and generally to 'those who drive'—that is, to those who avail themselves of the public streets, roads, and highways to operate motor vehicles in this state." (*Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1139 (*Troppman*).)

A suspension or revocation by the DMV based upon driving with a specified blood-alcohol concentration (see § 13353.2, subd. (a)) or the motorist's refusal to submit to chemical testing (see §§ 13353, subd. (a); 13353.1, subd. (a)) is known as an

committed in violation of Section 23140, 23152, or 23153. . . . [¶] . . . [¶] (C) The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23140, 23152, or 23153. [¶] (D) The person shall be told that his or her failure to submit to, or the failure to complete, the required breath or urine testing will result in a fine and mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153. The person shall also be told that his or her failure to submit to, or the failure to complete, the required breath, blood, or urine tests will result in (i) the administrative suspension by the department of the person's privilege to operate a motor vehicle. . . ." (§ 23612, subd. (a)(1)(A).)

5

" 'administrative per se' [procedure] because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration, without additional evidence of impairment." (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155 (*MacDonald*).) After the motorist receives notice of the suspension or revocation of his or her license, the DMV is required to review the determination made under the order of suspension based upon the peace officer's sworn report "and any other evidence accompanying the report." (§ 13557, subd. (a).) The DMV will sustain the determination if it finds by a preponderance of the evidence that: "(A) The peace officer had reasonable cause to believe that the person had been driving a motor vehicle in violation of Section 23136, 23140, 23152, 23153, or 23154[; ¶] (B) The person was placed under arrest or, if the alleged violation was of Section 23136, that the person was lawfully detained[; ¶] (C) The person refused or failed to complete the chemical test or tests after being requested by a peace officer[; and ¶] (D) . . . the person had been told that his or her privilege to operate a motor vehicle would be suspended or revoked if he or she refused to submit to, and complete, the required testing." (*Id.*, subd. (b).)

The motorist receiving a suspension or revocation notice may request an administrative hearing. (See § 13558, subd. (a).) The only matters to be considered at the administrative hearing are the four issues specified under section 13557, subd. (b)— namely, whether: (1) the officer had reasonable cause to believe the motorist had driven the motor vehicle under the influence; (2) the motorist had been placed under arrest; (3) the motorist had refused or failed to complete chemical test(s) upon the officer's request to do so; and (4) the motorist had been admonished of the consequences of such failure or refusal. (§ 13558, subd. (c)(1).) The DMV bears the burden of proof on these issues. (See *Petrus v. Department of Motor Vehicles* (2011) 194 Cal.App.4th 1240, 1244.) "The APS [Administrative Per Se] hearing is an informal proceeding where the rules of evidence are relaxed. [Citation.] It is designed 'to provide an efficient mechanism

6

whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive.' [Citation.]" (*Romane v. Department of Motor Vehicles* (2025) 110 Cal.App.5th 1002, 1008, quoting *Lake v. Reed* (1997) 16 Cal.4th 448, 462 (*Lake*).)

### 2. *Review of Administrative Order*

The administrative order sustaining the suspension or revocation of a motorist's license is subject to review by administrative mandate. (See *Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381, 418 (*Cisneros*).) "In ruling on a petition for writ of mandate following a DMV suspension order, the 'trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " [Citation.]' [Citations.]" (*Garcia*, *supra*, 185 Cal.App.4th at pp. 81-82, fn. omitted, quoting *Lake*, *supra*, 16 Cal.4th at pp. 456-457; see also *Cisneros*, *supra*, at p. 418 [because "[s]uspension or revocation of an issued driver's license affects a vested, fundamental right," superior court exercises independent judgment in its review of the administrative order].) In so doing, the trial court must " 'weigh the evidence and make its own determination as to whether the administrative findings [were] sustained.' [Citation.]" (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 638.) "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*).) Review by the court is based "on the record of the [administrative] hearing and the court shall not consider other evidence." (§ 13559, subd. (a).)

7

### 3. *Review of Superior Court Order from Mandate Petition*

In reviewing the decision from a petition for writ of mandate after a DMV license suspension, as the appellate court, we must consider " 'the record to determine whether the trial court's findings are supported by substantial evidence.' " (*Lake*, *supra*, 16 Cal.4th at p. 457.) In doing so, " ' "[w]e must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" ' [Citations.]" (*Ibid.*)

### C. **Appellant's Burden of Establishing Error**

Two guiding principles of appellate review are that the judgment or appealed order is presumed to be correct, and that the burden is on the appellant to demonstrate by an adequate record that the trial court committed prejudicial error. As the California Supreme Court has explained: "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*); see also *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [an

8

appellant's failure to present an adequate record will result in the issue being resolved against the appellant].)

### D.     Deficiencies in Appellate Briefing

This court observes that Tran has not complied with required rules of appellate procedure in his opening brief.[4]  We discuss four areas of briefing deficiencies below.

Tran's noncompliance with the rules of appellate procedure impacts the court's ability to properly address Tran's claims of error.  We acknowledge that Tran is representing himself in this appeal.  However, the rules of civil procedure apply with equal force to self-represented parties as they do to those represented by attorneys.  (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

#### 1.     *Absence of Required Information in Opening Brief*

Tran's opening brief does not include a requisite summary of the relevant procedural history of the case, including a plain statement of "the nature of the action, the relief sought in the trial court, and the judgment or order appealed from." (Rule 8.204(a)(2)(A).)  For instance, Tran does not include a summary of what transpired at the APS hearing, and a statement of what occurred at the hearing in the trial court on his petition.

Further, Tran is required in his opening brief to "[p]rovide a summary of the significant facts limited to matters in the record."  (Rule 8.204(a)(2)(C).)  Tran does not summarize the significant facts relevant to this appeal, namely, the evidence presented at the APS hearing, including the details of the traffic stop, specifics concerning the officers' requests to him and his responses during that stop, the results of any sobriety testing, and his alleged refusal to submit to a chemical test.  (See *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 868 [appellant's brief omitting a summary of significant facts was "seriously defective"].)  Moreover, Tran fails

---

[4] Tran did not file a reply brief.

9

in his opening brief to "[s]tate each point under a separate heading or subheading summarizing the point, and support[ing] each point by argument and, if possible, by citation of authority."  (Rule 8.204(a)(1)(B).)

### 2. *Absence of Supporting Record Citations*

In each appellate brief, the party is required to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  (Rule 8.204(a)(1)(C).)  Tran's opening brief contains *no* "reference[s] to [] matter[s] in the record by a citation to the volume and page number of the record where the matter appears."  (*Ibid.*)  The appellate court will deem "to be forfeited" any contention in a brief that is not supported by a citation to the record.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 407.)  We will therefore disregard Tran's unsupported factual and procedural statements.  (See *Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 451 (*Yeboah*) [factual statements in briefs "not supported by references to the record may be disregarded" by the reviewing court].)

### 3. *Inclusion of Matters Not Appearing in the Appellate Record*

The appellant in the opening brief must "[p]rovide a summary of the significant facts *limited to matters in the record*."  (Rule 8.204(a)(2)(C), italics added.)  "Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs."  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102 (*Lona*).)  We will therefore disregard extraneous alleged facts and procedural matters contained in Tran's opening brief.  (*Ibid.*)

### 4. *Adequacy of Appellate Record*

An appellant is required to serve a notice designating the record within 10 days of the filing of the notice of appeal.  (See rule 8.121(a).)  That notice must include whether the appellant intends to proceed with or without a record of the oral proceedings.  (See rule 8.121(b)(1)(C).)  If the appellant elects to proceed *with* a record of oral proceedings, he or she must identify the form of record intended to be used.  (See *ibid.*)  The form of

10

record may consist of a reporter's transcript, an agreed statement, or settled statement. (See rule 8.120(a).)

Tran filed a notice designating the record indicating his election to proceed by way of a reporter's transcript of the hearing on his petition occurring on January 22, 2024. The clerk of the superior court has filed a certificate with this court indicating that based upon investigation, there was no court reporter present at the January 22, 2024 hearing. Thus, there is no record of the oral proceedings before us. (See *Jameson*, *supra*, 5 Cal.5th at pp. 608-609 [appellant bears the burden of establishing error based upon an adequate record].)

### E. Denial of Petition for Writ of Mandate Was Proper

#### 1. *Appellant's Contentions*

Tran makes a number of factual assertions in his appellate brief. Of significance here, *none of these factual assertions were supported by citations to the record.* Because of Tran's complete noncompliance with rule 8.204(a)(1)(C), we may disregard all such unsupported factual statements. (See *Yeboah*, *supra*, 128 Cal.App.4th at p. 451.)

Tran's unsupported factual claims include the following: (1) Tran consumed no alcohol before the traffic stop; (2) at the time, he had "overly used [*sic*]" a hand sanitizer product containing 75% alcohol "all over [his] body, arms, and hands"; (3) he used the product as a requirement of his employer to reduce the spread of COVID-19 because of the contact he had as a driver of elderly persons; (4) his decision to pull over while driving his car before the traffic stop was the result of his suffering an allergic reaction to the product; (5) a description of specific actions Tran took after he pulled his van over into a bus stop to sleep; (6) the empty bottle of alcohol found by the officers had been collected by Tran and stored in his car five years prior; (7) the deputy opened the bottle to smell its contents but there was no alcohol present; and (8) the deputies did not permit

Tran to wear shoes during the field sobriety tests, and this prohibition impacted the results.[5]

Although not properly articulated in his opening brief, we surmise that Tran's core position is that there was a lack of substantial evidence to support the administrative decision, and the trial court improperly concluded that " ' " 'the weight of the evidence supported the administrative decision.' " [Citation.]' [Citations.]" (*Garcia, supra*, 185 Cal.App.4th at pp. 81-82, fn. omitted.) We address that core position below.[6]

### 2. *Evidence Supporting the Administrative Decision*

After an APS hearing[7] on August 14, 2023, the administrative hearing officer, S. Lartigue, issued her findings and decision (Administrative Decision), which was served on September 5, 2023.[8] The evidence considered and relied upon by the hearing officer included Tran's testimony, the arresting officer's sworn statement known as a Form DS 367 (DS 367), and the unsworn arrest report.[9] In the Administrative Decision,

---

[5] From our review, at least four of Tran's unsupported factual claims—listed above as items (5) through (8)—do *not* appear in the administrative record. We must disregard these purported facts that are not part of the appellate record. (See *Lona, supra*, 202 Cal.App.4th at p. 102 [appellate court will disregard claimed facts outside the record].)

[6] Other arguments that Tran appears to be making in his brief are identified and addressed in part II.E.4., *post.*

[7] Tran requested in his notice designating the record that the administrative record be supplied by the clerk. (See rule 8.120(a)(2).) However, no record was provided. After requesting and receiving the administrative record from DMV's counsel, this court, on its own motion, ordered that the record be augmented to include the administrative record lodged with the trial court.

[8] Although the final hearing occurred on August 14, 2023, there were three short administrative hearings that preceded it, dealing with administrative issues that included the DMV providing Tran with relevant documents to proceed with the hearing.

[9] "At any hearing, the department shall consider its official records and may receive sworn testimony." (§ 14104.7.) Police reports such as the sworn DS 367 statement and the officer's unsworn report here are routinely admitted at administrative per se hearings. (See *MacDonald, supra*, 32 Cal.4th at pp. 158-159; see also *Murphey v.* (continued)

the hearing officer framed the issues for determination as whether: (1) the arresting officer, "Deputy Garibaldi . . . of the [Santa Clara] Sheriff's Department,"[10] had probable cause to contact Tran; (2) Deputy Garibaldi had reasonable cause to believe that Tran had driven a motor vehicle while under the influence of alcohol; (3) Tran was lawfully placed under arrest; and (4) Tran, after proper admonishment, refused to complete a chemical test after being requested to do so by Deputy Garibaldi.

### a. Probable Cause to Contact

The hearing officer found that Deputy Garibaldi had probable cause to contact Tran. The factual findings in support of this conclusion included that Deputy Garibaldi, while on patrol, contacted Tran at 12:58 a.m. on Sunday morning, December 5, 2021, after observing that a white Honda van was illegally parked in a bus stop on Wolfe Road in Cupertino. After stopping, the deputy observed Tran place his van into reverse and drive it several yards backwards toward the patrol car.

The supporting evidence relied on by Hearing Officer Lartigue included Deputy Garibaldi's statements contained in the DS 367 and/or the arrest report that: (1) while on patrol, he and his partner observed a white Honda van parked in a bus stop on Wolfe Road; (2) he observed at the time an adult male who was "slumped over in the driver's seat," thus unlawfully parking in a bus stop in violation of section 22500, subd. (i); (3) he approached Tran on the passenger's side of the van, observed Tran to be sleeping in the driver's seat, knocked on the passenger window announcing the deputy's presence awakening Tran, and asked him to roll down the window; (4) Deputy Garibaldi observed Tran being unable to find the button to roll down the window, and, after starting the van,

_____

*Shiomoto* (2017) 13 Cal.App.5th 1052, 1063 ["[w]here an officer files a sworn statement with the [DMV], the officer's unsworn arrest report is admissible at the administrative per se hearing to supplement the sworn report"].)

[10] The reports indicate that Deputy Garibaldi's partner, Deputy Laguardia, was also involved in activities relating to Tran's arrest, including the performance of field sobriety tests.

he was still unable to roll down the window; (5) he observed Tran then place the van in reverse and drive it "a few yards backwards towards the patrol vehicle" before stopping; and (6) Tran then placed the van into park, turned it off, and opened the passenger door. Tran admitted to Deputy Garibaldi that he had driven the van.

### b. Reasonable Cause: Driving Under Influence

The hearing officer found that Deputy Garibaldi, based upon objective symptoms and other factors, had reasonable cause to believe that Tran had been driving a motor vehicle while under the influence of alcohol.

Relying on the evidence presented (the DS 367 and the arrest report), the hearing officer identified the facts showing reasonable cause that included Deputy Garibaldi's observation of Tran having (a) bloodshot and watery eyers, (b) an odor of alcoholic beverage, (c) an unsteady gait, and (d) slurred speech. In addition to these objective symptoms of intoxication, the hearing officer relied on Deputy Garibaldi's finding that Tran had performed poorly in field sobriety tests.[11] Further, Deputy Garibaldi smelled the odor of alcoholic beverage from the van at the time Tran opened the passenger door. And in conducting a consent search of the van, Deputy Garibaldi found a small, clear bottle of Remy Martin alcohol.[12]

### c. Lawful Arrest

Hearing Officer Lartigue concluded that Tran was lawfully arrested at 1:49 a.m. on December 5, 2021, for driving under the influence in violation of sections 23152,

---

[11] Tran's performance during field sobriety tests is detailed in the arrest report. Included in this report were the following: (a) Tran was unable to maintain balance when asked to stand in heel-to-toe position with his right foot forward; (b) Tran was unable to follow instructions or to complete the correct performance of the heel-to-toe walking test; and (c) Tran was unsuccessful in several attempts to complete the test involving raising one leg off the ground and standing on one leg while counting.

[12] Deputy Garibaldi reported that Tran denied that he had consumed any alcoholic beverages.

14

23153, or 23140. The hearing officer found the arresting officer had reasonable cause to believe Tran had been driving a motor vehicle while under the influence.

### d. Refusal: Chemical Test

The hearing officer found that Tran—after having been admonished by Deputy Garibaldi of the consequences of such refusal—refused or failed to complete a chemical test or tests after the deputies requested him to do so.

This finding was based upon the evidence presented (the DS 367 and the arrest report), which included Deputy Garibaldi's sworn statement that: (1) Deputy Garibaldi or his partner admonished Tran that, because he was believed to be under the influence, state law required him to submit to and complete a chemical test to determine the presence of alcohol in his blood; (2) the deputy or deputies further admonished Tran that if he refused to submit to or failed to complete a chemical test, his driving privileges would be administratively suspended for one year or administratively revoked for two or three years by the DMV; and (3) Tran responded " 'No' " twice when asked if he would take a breath test or a blood test. The hearing officer further noted that Tran had not disputed that he had been properly admonished or that he had refused to submit to chemical testing.[13]

### e. Tran's Defense

Hearing Officer Lartigue stated in her decision that it was Tran's position that there had been no probable cause for the peace officer to contact him and that there had been no lawful arrest. She responded in her Administrative Decision that probable cause had been "well articulated" from the evidence. Specifically, the hearing officer noted

---

[13] The record (arrest report) reflects that after Tran's arrest, Deputy Garibaldi or his partner sought and obtained a DUI search warrant, and that a certified phlebotomist executed the warrant by drawing two vials of blood at 3:14 a.m. on December 5, 2021. The toxicology results reflected a blood alcohol content (more than two hours after the traffic stop) of 0.175, more than twice the legal limit of 0.08 % blood alcohol content. (See § 23152, subd. (b).)

that Deputy Garibaldi or his partner Laguardia, in performing their duties: observed a traffic violation, namely, Tran's being illegally stopped in a bus stop (see § 22500, subd. (i)); then observed Tran to be asleep in his vehicle; later witnessed Tran place his vehicle in reverse and drive it several yards backwards towards the patrol vehicle; and then observed objective symptoms that Tran was intoxicated.

Tran testified at the APS hearing that the statements of Deputy Garibaldi or his partner in the DS 367 and the arrest report were "falsified" and constituted "defamation." He asserted that he had been unlawfully detained and arrested. Tran testified that because of his work, he had used a hand sanitizer over the course of the entire evening, and the sanitizer had a 75% alcohol content. The hand sanitizer had gotten in his eyes and irritated them. He was in his parked vehicle sleeping at the time he was startled awake by the deputies. He claimed that his vehicle was legally parked at the time because he was not obstructing traffic. Tran did not directly respond to Hearing Officer Lartigue's question of whether he was illegally parked in a bus stop.

### 3. Substantial Evidence Supported Trial Court's Findings

As previously noted, the trial court's role in considering a petition for writ of mandate challenging an administrative decision suspending the petitioner's driver's license is to exercise its independent judgment—"afford[ing] a strong presumption of correctness [to] the administrative findings" (*Fukuda*, *supra*, 20 Cal.4th at p. 817)—"to determine . . . ' "whether the weight of the evidence supported the administrative decision." ' [Citations.]" (*Lake*, *supra*, 16 Cal.4th at pp. 456-457.)[14] Our role as reviewing court is to consider " 'the record to determine whether the trial court's findings are supported by substantial evidence.' " (*Id.* at p. 457.)

---

[14] We note that the trial court specifically acknowledged its duty to exercise independent judgment in determining whether the weight of the evidence supported that Administrative Decision. (See *Garcia*, *supra*, 185 Cal.App.4th at pp. 81-82.)

The trial court concluded that the hearing officer's Administrative Decision was fair, the evidence supported the suspension of Tran's license, and the administrative findings were supported by the weight of the evidence. The court gave detailed reasoning, including substantial legal authority, in exercising its independent judgment to conclude that the weight of the evidence supported the administrative findings. A summary of the trial court's conclusions and reasoning follows.

### a. Observation of Driving While Intoxicated Not Required

Tran made the assertion in his briefing before the trial court that the suspension was improper because he had not driven a motor vehicle in the deputies' presence and thus could not be arrested for driving under the influence.[15] The trial court rejected this contention.

The trial court held that the law does not require the arresting officer to have actually observed the motorist driving immediately prior to his or her arrest as long as the officer has reasonable cause to believe the motorist had been driving under the influence. In so concluding, the trial court relied on *Troppman*, *supra*, 40 Cal.4th 1121. There, as was the case here, the arresting officer "observed [the motorist] 'parked on the side of the road passed out behind the wheel.' " (*Id.* at p. 1126.) The California Supreme Court rejected the view that the arresting officer was required to have observed the motorist driving in order to arrest him or her for driving under the influence: "[C]onsent to testing pursuant to section 23612 applies broadly and generally to 'those who drive'—that is, to those who take advantage of the public streets, roads, and highways to operate motor vehicles in this state—but that this statute does not require proof of actual driving immediately prior to lawful arrest for driving while under the influence of alcohol or a drug. . . . [R]evocation or suspension of a license under section 13353 and related

---

[15] As noted, *ante*, there is no reporter's transcript from the hearing on Tran's petition. Accordingly, we determine Tran's arguments below solely from the pleadings that are part of the record.

statutes for refusal to submit to chemical testing under the implied consent law—a consequence conditioned upon only four requirements, including that *the arresting officer had reasonable cause to believe the person had been driving a motor vehicle while under the influence*, but *not* including a finding of actual driving—similarly does not require proof that the person actually was driving immediately prior to the arrest." (*Id.* at pp. 1125-1126, original italics.)

Further, it was undisputed that Deputy Garibaldi, in fact, witnessed Tran briefly driving the van when he placed the vehicle in reverse and drove backwards several yards. And Tran admitted to Deputy Garibaldi that he had driven the van.

The trial court, based upon its review of the substantial evidence before it, did not err in concluding that the deputies' ultimate arrest of Tran for driving under the influence was proper, notwithstanding their having not personally observed his operation of his vehicle prior to contacting him. (See *Troppman*, *supra*, 40 Cal.4th at p. 1126.)

### b. Lawful Arrest

Tran testified at the APS hearing that he had been subjected to an "illegal, unlawful arrest." Likewise, Tran asserted in the court below that there was no probable cause based upon the evidence and that his arrest was unlawful.

The trial court found that the deputies' initial contact with Tran was appropriate as "a lawful welfare check, and indeed [an] expected exercise of the [deputies'] community caretaking responsibility." This conclusion was based upon evidence, recited by the trial court from the administrative record, that the officers at the time of contact observed Tran's vehicle being illegally parked after midnight in a bus stop with "[Tran] slumped [over] in the driver's seat." At the APS hearing, Tran admitted that he had pulled his van off the road and was sleeping at the time the officers made contact with him. The hearing officer concluded that at the time of the encounter with the deputies, Tran was illegally parked in a bus stop. (See § 22500, subd. (i).) When Tran was asked by the hearing officer, he did not directly contradict that he was parked illegally at a bus stop, stating

18

instead that because his eyes were irritated by hand sanitizer, he did his best to pull his van out of the flow of traffic.

The court reasoned further that after making contact, observing signs of Tran's intoxication, and after his admission that he had been driving, it was proper, and indeed the deputies "were required" to transition from a community caretaking role to investigation of a potential driving-under-the-influence offense. (See *Marvin v. Department of Motor Vehicles* (1984) 161 Cal.App.3d 717, 719 [after questioning motorist and detecting "the 'strong odor of an alcoholic beverage on her breath and person,' the circumstances reasonably became 'consistent with criminal activity,' . . . [which] 'permit[ted]—even demand[ed]—an investigation' "].) In concluding that the deputies held a reasonable belief that Tran had driven his vehicle while under the influence of alcohol, the trial court noted evidence that Tran: (1) was observed by the deputies in the driver's seat; (2) admitted to officers that he had driven his van; (3) had a bottle of alcohol inside his van; (4) "started the car and drove in reverse" during his encounter with the deputies; (5) "displayed numerous objective symptoms of intoxication, including an odor of alcohol, red and watery eyes, and unsteady gait"; and (6) "performed poorly on field sobriety tests."

At the APS hearing, Tran denied he had consumed alcohol, instead emphasizing that at his employer's directive, he had used hand sanitizer that evening that had an alcohol content of 75%. Tran also testified at the APS hearing that he had drunk Listerine mouthwash that evening.

The trial court held that, as a result of the investigation, the deputies had reasonable cause under section 40300.5 to arrest Tran on suspicion of driving while under the influence of alcohol. The court found that the deputies' arrest of Tran was supported by the record under the following three subdivisions of section 40300.5: (1) "[t]he person is observed in or about a vehicle that is obstructing a roadway" (*id.*, subd. (b)), because stopping a vehicle on the shoulder creates a hazardous condition (see *Cabral v.*

19

*Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 775 [observing the foreseeability of accidents resulting from vehicles being stopped on the side of the freeway or on the roadside shoulder]); (2) "[t]he person may cause injury to themselves or damage property unless immediately arrested" (§ 40300.5, subd. (d)); and (3) "[t]he person may destroy or conceal evidence of the crime unless immediately arrested" (*id.*, subd. (e); see *Troppman*, *supra*, 40 Cal.4th at p. 1136, fn. 11 [noting that Legislature amended § 40300.5 to add subdivision (e) to address circumstances in which evidence of intoxication will be destroyed due to passage of time]).

Based upon the record, there was substantial evidence supporting the trial court's findings that the deputies made lawful contact with Tran initially (i.e., had probable cause to make the contact), and thereafter they formed a reasonable belief that Tran had violated the law by driving while intoxicated, thus justifying his arrest. The evidence included the matters recited by the trial court as outlined above. And while Tran denied at the APA hearing having consumed alcohol and gave explanations involving the use of a hand sanitizer and mouthwash, the trial court (and the hearing officer) were free to reject Tran's testimony. We defer to the trial court concerning its resolution of this evidentiary conflict. (See *Lake*, *supra*, 16 Cal.4th at p. 457.)

### c. Chemical Testing Refusal

The trial court found that Tran was admonished by the deputies, and he responded " 'No' " to consenting to chemical testing. The trial court stated: "There is no room for confusion regarding the word 'No'; it can only mean refusal." As further evidence of Tran's refusal, the court noted that Deputy Garibaldi was compelled to apply for a search warrant to require Tran to submit to a blood draw. The trial court found that Tran's clear refusal to complete chemical testing was a violation of the implied consent law, thereby subjecting him to consequences that include the loss of driving privileges. (See § 13353, subd. (a)(1); *Garcia*, *supra*, 185 Cal.App.4th at p. 81.) Further, the trial court, citing case law, observed the fact that Tran was subjected to a compulsory blood draw pursuant to

20

search warrant approximately three hours after the traffic stop was of no consequence to his suspension based on his refusal to submit to testing. (See *Barrie v. Alexis* (1984) 151 Cal.App.3d 1157, 1162 [ultimate retrieval of chemical sample " 'is of no significance' " because "[i]t is the initial refusal which forms the basis for suspension of the driver's license under section 13353"].)

The trial court did not identify any contrary evidence concerning the deputies' admonishment of Tran. From our review of the administrative record, there was *no* contrary evidence. Tran testified at the APA hearing that because his arrest was unlawful, and because a peace officer may only perform a chemical test in conjunction with a lawful arrest, Tran had "the right to remain silen[t] and not comply with the law." He did not deny that the deputies had admonished him about the consequences of refusing to submit to chemical testing.

The trial court's findings that Tran unequivocally refused to submit to chemical testing after having been admonished by officers of the consequences of such refusal were supported by substantial evidence.

### 4. Other Contentions by Tran

Tran makes several contentions—undesignated with separate headings, unsupported by citation to the appellate record, and unsupported by citation to legal authority—that appear to be arguments made in support his appeal. We address these contentions below.

#### a. Due Process Claim

Tran asserts that the hearing officer committed "[p]rofessional negligence" in giving "wrong instructions of structural error between two entities within DMV field offices and Sacramento offices decision of procedure due process hearing." (*Sic.*) It is unclear whether Tran, as he argued before the court below, is claiming on appeal that his due process rights were violated in connection with the APS hearing. Since the contention he makes lacks clarity or supporting reasoning, this court may consider it

21

abandoned. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) ["conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate" and will be treated "as abandoned"].) Because, however, the trial court addressed at length Tran's claim that the manner in which the APS hearing was conducted violated his due process rights, we will exercise our discretion and consider the matter in this appeal.

As explained by the trial court, the due process issue arose from two appellate decisions. First, the court in *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 532 (*CDLA*) addressed the propriety of conducting an administrative per se hearing in which a single representative of the DMV performed dual roles as the DMV advocate and as the officer hearing the evidence, making findings, and rendering the decision. "Although procedural fairness does not prohibit the combination of the advocacy and adjudicatory functions within a single administrative agency, tasking the same individual with both roles violates the minimum constitutional standards of due process. The irreconcilable conflict between advocating for the agency on one hand, and being an impartial decision maker on the other, presents a ' "particular combination of circumstances creating an unacceptable risk of bias." ' [Citations.]" (*Ibid.*)

Second, in *Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186 (*Knudsen*) addressed further the due process issue in the context of an administrative per se hearing.[16] The court noted that although in *CDLA*, *supra*, 77 Cal.App.5th at page 532, that court held that having a single DMV person act as both advocate and hearing officer offended minimum due process standards, no cases had set forth guidelines by which a

---

[16] *Knudsen* was decided April 4, 2024, *after* the hearing on Tran's petition but before the trial court had ruled in the case. The trial court, on April 5, 2024, vacated submission and ordered the parties to brief *Knudsen,* including its impact on the court's approach in this case.

trial court should decide this form of due process challenge.  (*Knudsen*, *supra*, at p. 193.)  The *Knudsen* court succinctly described its holding on this issue of first impression: "[W]e conclude that to resolve such a challenge, it is first necessary to determine whether a particular driver's due process right to an impartial adjudicator was violated.  Consistent with *DUI Lawyers*, that determination is made by assessing the administrative record and the revocation decision to see if the public hearing officer actually acted as both an adjudicator *and* an advocate, or merely acted as an adjudicator and a collector and developer of evidence.  If the relevant documents demonstrate that the public hearing officer did not act as an advocate, then the driver's due process right to an impartial adjudicator was not violated, and the constitutional issue is resolved.  If the relevant documents demonstrate that a public hearing officer actually acted as an advocate, then the driver's due process right to an impartial adjudicator is violated.  In the latter circumstance, because we conclude that a violation of the due process right to an impartial adjudicator is a structural error, then the driver is entitled to a new APS hearing before a constitutionally impartial adjudicator." (*Ibid.*)

Here, the trial court, applying *Knudsen*, concluded there was no due process violation.  The court noted with emphasis that Hearing Officer Lartigue acknowledged that her role was one of neutral decisionmaker only:  " 'I will be acting as a neutral factfinder.  I am prohibited and will not act as an advocate for the DMV or law enforcement. . . . my role here today is to review the evidence provided, ask clarifying questions or witnesses if necessary, and make legal rulings and determinations under the relevant statutes as necessary.' "  (Boldface omitted.)  The trial court, after reviewing the administrative record, found that the "[Administrative D]ecision focuse[d] on the appropriate issues."  The court concluded further that the hearing officer :
(1) "appropriately collected and developed the standard evidence and facts for an APS suspension"; (2) "fairly considered and overruled [Tran's] objection" that "the arrest report was 'falsified' and the officer defamed him"; (3) "appropriately considered [the]

23

evidence," namely the arrest report and statement of the arresting officer; (4) "collected the evidence offered by [Tran]" at the August 14, 2023 hearing, which was his "testimony that the Deputy did not have probable cause to contact him and that his symptoms of intoxication were allegedly caused by hand sanitizer he had used earlier"; (5) did not interrupt or object to Tran's testimony"; (6) asked Tran only a few "legitimate and neutral questions solely to clarify [Tran's] . . . testimony; (7) did not comment on Tran's evidence or discourage him from presenting it; (8) "remained an impartial fact-finder throughout the proceeding"; (9) "did not distort or mischaracterize [Tran's] testimony in the written [Administrative D]ecision"; and (10) "fairly characterize[d] the facts and the law" in the Administrative Decision.

We have reviewed the administrative record and agree with the trial court's conclusion that the hearing officer acted as a neutral decisionmaker and did not stray into assuming the role of an advocate. Thus, the trial court properly rejected Tran's due process challenge. (See *CDLA*, *supra*, 77 Cal.App.5th at p. 532.)

### b.      Alleged Violation of 90-Day Submission Rule

Tran asserts that the judgment should be vacated because the trial court did not decide the case within 90 days of its submission in violation of article VI, section 19 of the California Constitution.[17]

Tran's argument fails for several reasons. First, the argument is conclusory and contains no supporting legal authority. The claim is thus abandoned. (See *Benach*, *supra*, 149 Cal.App.4th at p. 852 [conclusory argument]; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [appellate court "need not consider an argument for which no authority is furnished"].) Second, Tran fails to cite to the record that indicates *when* the matter was submitted in relation to the court's filing of its Final Decision on August 21,

---

[17] "A judge of a court of record may not receive the salary for the judicial office held by the judge while any cause before the judge remains pending and undetermined for 90 days after it has been submitted for decision." (Cal. Const., art. VI, § 19.)

24

2024. Third, it appears from the limited record before us that there was *no violation* of the 90-day rule for submission of cases. The court, after the hearing on the petition was concluded on January 22, 2024, took the case under submission that same day. However, on April 5, 2024, the trial court vacated the submission order and requested that the parties brief the due process issue raised in by the Fifth District Court of Appeal a day earlier in *Knudsen*, *supra*, 101 Cal.App.5th 186. There is no record that the case was submitted a second time after April 5, 2024. Fourth, even if the record were to reflect a violation of 90-day submission rule—which it does not—there is no legal authority to support the proposition (apparently advanced by Tran) that an order or judgment filed more than 90 days after submission of the case renders it subject to attack. Rather, the law is to the contrary: "Resubmission without good cause is improper. [Citation.] . . . [¶] Whether or not the court was justified in resubmitting the matter, there is no basis to impeach the decision it reached. . . . The trial judge remained fully vested with authority to decide the case . . . ." (*Hassanally v. Firestone* (1996) 51 Cal.App.4th 1241, 1245.)

### c. Claimed Error in Requesting Supplemental Briefing

Tran also makes the apparent claim that the trial court judge acted improperly by asking for supplemental briefing from the parties, instead of simply issuing its Final Decision without additional briefing. He submits no authority for the proposition. (See *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284 [failure to cite legal authority for position in appellate brief "amounts to an abandonment of the issue"].) To the extent that Tran argues that, because he is not an attorney, it was unfair of the trial court to request supplemental briefing, the claim is meritless. (See *Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [party who is self-represented "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys"].) In any event, the trial court did not abuse its discretion by requesting supplemental briefing from the parties concerning a due process claim *asserted by Tran*

before rendering its decision.  (See *Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 383.)

### d.  Alleged Exclusion of Evidence

Tran apparently contends that the trial court erred by allegedly refusing to admit exhibits offered at the hearing on the petition.  The contention has no merit.

The record does not show the foundational facts in support of Tran's apparent claim, namely, that *he offered* the evidence at the hearing, and *the court rejected it*.  (See *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1304 [where record did not demonstrate that "defendant's trial counsel ever sought to introduce [witness's] testimony or that the trial court excluded it," defendant's claim of erroneous exclusion of evidence under Evid. Code, § 354 failed]; see also *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [party challenging a ruling by the trial court has the burden of showing reversible error by an adequate record].)  Moreover, Tran offers nothing more than the unsupported assertion that the trial court did not allow the introduction of exhibits at the hearing on the petition for writ of mandate.  He presents no argument that the trial court erred in doing so. Indeed, he does not even state that the alleged exclusion of exhibits *was error* by the trial court.  We will treat this bare contention as abandoned.  (See *Benach*, *supra*, 149 Cal.App.4th at p. 852.)[18]

### 5.  Conclusion

In considering the trial court's denial of Tran's petition for writ of mandate after a DMV license suspension, we have reviewed " 'the record to determine whether the trial court's findings are supported by substantial evidence.' "  (*Lake*, *supra*, 16 Cal.4th at p. 457.)  We have considered the record that is before us, including the administrative

---

[18] Tran makes two further general contentions, without elaboration or explanation as to their relationship to his claim that the trial court erred:  (1) the deputies involved in his arrest did not comply with COVID-19 restrictions; and (2) there was "[c]ounsel misconduct in an attempt to prejudice [Tran's] case."  We will deem these conclusory arguments abandoned.  (See *Benach*, *supra*, 149 Cal.App.4th at p. 852.)

record containing the transcript of the hearings before the hearing officer, and the pleadings filed by the parties in the trial court that are found in the clerk's transcript.[19] Conversely, as discussed, *ante*, we have disregarded matters asserted in Tran's appellate brief which are not supported by citations to the record, including but not limited to claimed factual matters which, plainly, are *not* contained in the administrative record. (See *Lona*, *supra*, 202 Cal.App.4th at p. 102 [appellate court will disregard claimed facts outside the record].)  Based upon the record, we find no error and conclude that there was substantial evidence to support the trial court's denial of Tran's petition.

## III.    DISPOSITION

The September 13, 2024 judgment is affirmed.  Respondent shall recover its costs on appeal.

---

[19] As noted, *ante*, the appellate record is incomplete; there is no reporter's transcript or settled statement of the hearing on the writ petition.  (See *Jameson*, *supra*, 5 Cal.5th at p. 609 ["a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"].)

_____
                            WILSON, J.


WE CONCUR:




_____
DANNER, Acting P. J.




_____
BROMBERG, J.




*Tran v. Dept. of Motor Vehicles*
**H052535**